IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANGEL PEREZ,

    Petitioner,

v.                                                      No. CIV 01-808 MV/LFG

LAWRENCE TAFOYA, Warden,
and PATRICIA MADRID,

    Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.    This is a proceeding on a petition for writ of habeas corpus under 28 U.S.C. § 2254, filed July 12, 2001 [Doc. 1]. Respondents filed their Answer [Doc. 10] on August 24, 2001, and requested dismissal of the petition. Petitioner Angel Perez ("Perez") currently is confined in the Guadalupe County Correctional Facility in Santa Rosa, New Mexico.

2.    On July 26, 1999, a jury convicted Perez of trafficking cocaine. Under the Judgment and Commitment Order, entered September 9, 1999 by the Sixth Judicial District Court in State v. Perez, Cr. No. 98-242 (Luna County, New Mexico), Perez was sentenced to nine years, all but two

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

1

of which were suspended. However, because the Court found that Perez had at least three prior felony convictions, which Perez admitted to in open Court, he was sentenced to an additional eight years for a total of ten years. [Doc. 10, Exs. J & L.]

3. As grounds for federal habeas review, Perez set forth three separate claims: (1) denial of a speedy trial in violation of his Sixth Amendment rights; (2) denial of access to court records and authorization to seek an interlocutory appeal of Perez's motion to dismiss based on speedy trial grounds; and (3) denial of Perez's requests for new counsel and change of trial venue. As part of Count Three of his petition, Perez also refers to or includes the "other 7 claims attached hereto on writ of certiorari filed to the New Mexico Supreme Court filed July 24, 2000." [Doc. 1 at p. 9.] In his Petition for Writ of Certiorari to the New Mexico Court of Appeals, filed July 24, 2000, Perez set forth the following nine issues for review: (1) denial of speedy trial; (2) improper denial of access to transcripts; (3) improper denial of interlocutory appeal; (4) improper denial of change of counsel; (5) improper denial of change of venue; (6) improper failure of trial judge to recuse himself; (7) improper refusal to permit Perez to personally interview witnesses; (8) trial court's improper decision to allow State to amend supplemental criminal information at sentencing; and (9) ineffective assistance of counsel. [Doc. 10, Ex. GG.]

4. The three counts in Perez's habeas petition include issues 1-5 raised in his Petition for Writ. However, because Count 3 of his petition could be read to include all of the issues he raised in his Petition for Writ, the Court will consider each of those claims in its resolution of this matter. Thus, these findings and recommended disposition also address issues 6-9 in his Petition for Writ, although the ineffective assistance of counsel claim will be addressed within Perez's claim for new counsel.

5. The New Mexico Court of Appeals affirmed Perez's conviction, and the state supreme court denied certiorari. Respondents agree that Perez exhausted his state remedies as to each of the claims he raises in his § 2254 petition. Even though the Respondents' Answer refers only to the petitioner's "three claims", Perez has exhausted his state remedies as to all of the claims addressed in these findings and proposed disposition.

6. Respondents argue that federal habeas relief is not available to Perez because all of the claims raised in his petition have been adjudicated on the merits by the courts of New Mexico, and that those adjudications are entitled to deference by this Court under 28 U.S.C. § 2254(d).

7. All of the issues Perez raises in his petition were addressed in state court, either on direct appeal or in habeas proceedings. The Court agrees with Respondents that Perez's claims have been fully adjudicated in state court and that the decisions rendered there are not contrary to established federal law and do not represent an unreasonable determination of the facts.

**Deference to State Adjudications**

8. A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the proceeding resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833, 121 S.Ct. 88 (2000).. "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." Thompson v. Oklahoma, 202 F.3d 283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan.10, 2000), *cert. denied*, 530 U.S. 1265, 120 S.Ct. 2725 (2000).

9. Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "increase[d] the deference to be paid by the federal courts to the state court's factual findings and legal determinations." Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997). The Tenth Circuit Court of Appeals recently explained:

> Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case. 'Under § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable.' 'In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.' AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence.

Sallahdin v. Gibson, ___ F.3d ___, No. 99-6361, 2002 WL 12273 at *2-3 (10th Cir. Jan. 4, 2002) (*relying on* 28 U.S.C. § 2254(e)(1); Walker v. Gibson, 228 F.3d 1217, 1225 (10th Cir. 2000), *cert. denied*, 121 S.Ct. 2560 (2001)).

**Denial of Speedy Trial Claim**

10. On June 9, 1998, Perez was arrested on a one-count information, charging him with trafficking a controlled substance. On June 10, 1998, Perez had an initial appearance and was released on unsecured bond.

11. Perez first was assigned public defender Stephen Stevers, but Mr. Stevers moved to withdraw as counsel due to a conflict. Kieran Ryan, a contract conflicts public defender was assigned. On August 13, 1998, Mr. Ryan signed a waiver of a preliminary hearing as counsel for

4

Perez. [Doc. 10, Ex. BB at pp. 3, attachment 3.] A notice of arraignment in district court was scheduled for August 31, 1998, but on September 1, 1998, the case was remanded to magistrate court due to Perez's protest of Mr. Ryan's filing an unauthorized waiver of preliminary hearing. [Doc. 10, Ex. BB, attachment 4.] On September 2, 1998, Mr. Ryan moved to withdraw as counsel citing lack of communication between attorney and client. [Doc. 10, Ex. BB, attachment 6.]

12. On September 19, 1998, James Dawdy, conflicts public defender was appointed as counsel to Perez. A preliminary hearing was held on November 12, 1998, and Perez was arraigned in state district court on December 10, 1998. [Doc. 10, Ex. BB, at p. 4.] The January 8, 1999 Pre-Trial Order set the case for trial on a calendar commencing on April 19 and ending on April 30, 1999. The specific trial date for Perez, during that calendar, was to be set at a docket call on April 5, 1999.

13. Between June 10, 1998 and about March 18, 1999, Perez was not in custody. On about March 18, 1999, however, he was arrested on a federal warrant for a probation violation and held in custody in Estancia, New Mexico. [Doc. 10, Ex. BB.] That arrest related to a prior conviction for domestic battery in September 1998. [Tape of May 25, 1999 hearing from State Record Proper ("R.P.").]

14. While in custody on the federal warrant, Perez did not contact his court-appointed counsel, Mr. Dawdy, and Mr. Dawdy did not know that Perez was in custody. [May 25, 1999 Tape.] Mr. Dawdy later reported to the trial court that he had gone to Perez's last known address about seven times from late March 1999 through mid-April 1999, but had been unable to learn where Perez was. [May 25, 1999 Tape.] Mr. Dawdy also informed the court that he had sent certified mail to Perez at that same address but that the mail was returned to him. [May 25, 1999 Tape.] At the April

5, 1999 docket call, Mr. Dawdy reported to the court that he had lost contact with his client. [Doc. 10, Ex. B. at p. 1.]

15. On April 14, 1999, a bench warrant was issued to revoke Perez's prior conditions of release since he had not been located. [Doc. 10, Ex. BB, at p. 4.] His trial at that point was initially scheduled for April 28, 1999, but that date was amended to April 30, 1999. Apparently, Perez was not located prior to that trial setting, and that setting was vacated.

16. On May 6, 1999, while still in custody on the federal warrant, Perez filed his own motion to dismiss in his state proceeding based on alleged speedy trial violations and also filed a written request for new counsel. [Doc. 10, Ex. A.] With respect to the speedy trial claim, Perez alleged that his mother had recently passed away and that she would have been a crucial alibi witness on his behalf.

17. On May 13, 1999, Perez was arrested on the bench warrant. On May 25, 1999, he made his first appearance on the bench warrant, at which time his motion to dismiss and request for new counsel also were heard by the court. [Doc. 10, Ex. BB.]

18. At the May 25, 1999 hearing, the State argued that Perez's April 30, 1999 trial date, that was missed due to Perez's incarceration on the federal warrant, would have been timely as it was scheduled within six months of his arraignment on December 10, 1998. Moreover, the recent bench warrant issued for Perez's non-appearance further tolled the time in which a trial had to be held under Rule 5-604(B)(5) of the New Mexico Rules of Criminal Procedure. [May 25, 1999 Tape.]

19. After hearing argument from defense counsel, Perez himself and the State, the trial court denied Perez's motion to dismiss and informed Perez that it had to extend the six months time limit for an additional sixty days due to Perez's arrest and the court's calendar. [May 25, 1999 Tape.]

6

The trial court's May 28, 1999 Pre-Trial Order initially set the new trial date for June 30, 1999. [Doc. 10, Ex. B.] That Pre-Trial Order also stated the time limits for Perez's trial were being extended under Rule 5-604 for "good cause sua sponte [as] this is the first jury docket available." [Doc. 10, Ex. B, at p. 2.]

20. On June 10, 1999, the State moved to continue the June 30, 1999 trial date because its key witness was unavailable. [Doc. 10, Ex. F.] Perez's counsel filed objections to the request. The trial court granted the State's request and re-set the trial for July 26, 1999. Perez was tried and found guilty on that date. [Doc. 10, Ex. H.]

21. In his petition, Perez contends that his Sixth Amendment right to a speedy trial was violated when over a year elapsed between his arrest in June 1998 and the July 26, 1999 trial and that such a delay is "presumptively prejudicial." He asserts that the delays in his trial date were not his fault and that he was deprived of a defense because his mother, who had passed away before the later trial date, could not provide key alibi testimony. Perez urges that his conviction be reversed and that the charges thus be dismissed. [Doc. 1.]

22. Perez has a right "to a speedy and public trial" under the Sixth Amendment. U.S. Const. Amend. VI. In determining whether a defendant has been deprived of his constitutional right to a speedy trial under the Sixth Amendment, a court should consider and balance the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972); United States v. Dirden, 38 F.3d 1131, 1137 (10th Cir. 1994). The threshold inquiry is the length of delay. The remaining factors are examined only if the length of delay is found "presumptively prejudicial." Dirden, 38 F.3d at 1137.

23. Perez's trial took place slightly over a year from date of arrest or a little more than seven months after arraignment. The Tenth Circuit "ha[s] not drawn a bright line beyond which pretrial delay will trigger *Barker* analysis." Dirden, 38 F.3d at 1137. In Dirden, a seven or eight month delay between arraignment and trial was not considered "presumptively prejudicial." Id. at 1138. *See* United States v. Kalady, 941 F.2d 1090, 1095-96 (10th Cir. 1991) (eight month delay is nonprejudicial); United States v. Bagster, 915 F.2d 607, 611 (10th Cir. 1990) (delay of thirty months did not trigger Barker analysis). *See also* United States v. Lindsey, 47 F.3d 440, 443 (D.C. Cir. 1995) (16 month period between arrest and trial on drug trafficking charges was not extraordinary), *vacated on other grounds by* Robinson v. United States, 516 U.S. 1023, 116 S.Ct. 665 (1995); *but see* Perez v. Sullivan, 793 F.2d 249, 255 (10th Cir.) (fifteen month delay was "presumptively prejudicial), *cert. denied*, 479 U.S. 936, 107 S.Ct. 413 (1986). In Doggett v. United States, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686 (1992), the United States Supreme Court recognized that lower courts generally have found post-accusation delay "presumptively prejudicial" when the delay approaches one year.

24. In this case, the State court concluded that the delay encountered by Perez between his arrest date and time the jury was empaneled on July 19, 1999 was "presumptively prejudicial." The State court proceeded to engage in a four-part balancing test, identical to the Barker v. Wingo analysis. [Doc. 10, Ex. FF. at p. 2.] The determinations of factual issues made by a State court are presumed to be correct. Wilson v. Mitchell, 250 F.3d 388, 394-95 (6th Cir. 2001) (considering speedy trial claim.)

25. The State court attributed some of the delay to neither party, a portion to Perez and about seven months of the delay to the State. [Doc. 10, Ex. FF.] Ultimately, the State court weighed

8

this first factor of the Barker v. Wingo test in favor of the State and found that the time charged to the State was not oppressive. [Doc. 10, Ex. FF at p. 5.] This Court must presume the State court's findings to be correct. Indeed, the record reflects that the initial four month delay in conducting Perez's preliminary hearing was due to Perez's disagreement with his prior counsel's filing of a waiver of the preliminary hearing, the need to re-set the preliminary hearing and prior counsel's motion to withdraw due to lack of communication with his client, even though the State court declined to charge this delay against either party. [*See* Doc. 10, Ex. FF.]

26. Moreover, the trial would have proceeded on April 30, 1998 (within six months of Perez's arraignment), as scheduled, had Perez not been arrested on a federal warrant in March 1998. It appears that Perez did not attempt to inform his attorney of his whereabouts at this time, but there is no evidence that Perez was attempting to conceal himself, while incarcerated, or otherwise interfere with the State's efforts to locate him. The State court apparently only charged a part of this time against Perez. [Doc. 10, Ex. FF at p. 4.]       .

27. At the May 25, 1999 hearing, the trial court itself informed the parties that the case could not be set for trial until the end of June 1999 due to its docket. [May 25, 1999 Tape.] The State court appeared to charge this delay against the State. *See* United States v. Jenkins, 701 F.2d 850, 856 (10th Cir. 1983) (unintentional delays due to overcrowded dockets are weighed against the government), *rejected on other grounds by* 476 U.S. 79, 106 S.Ct. 1712 (1986). The State court also appeared to charge the State with the delay of trial from June 30 to July 26, 1999, since the State requested the continuance due to unavailability of a key witness. However, this Court notes that an appropriate delay due to the unavailability of witnesses is not chargeable to the State. Barker, 407 U.S. at 531.

28. The State court also concluded that Perez had properly asserted his right to a speedy trial even though his request, filed on May 6, 1999, was made rather late in the proceedings. Lastly, while the State court was not convinced that Perez had demonstrated prejudice to the delay, it gave Perez the benefit of the doubt by weighing this factor slightly in Perez's favor. [Doc. 10, Ex. Ff. at p. 4.]

29. Under the Barker v. Wingo analysis, prejudice is assessed in light of three interests: "(1) prevention of oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." Jenkins, 701 F.2d at 857. Here, Perez was not in custody from the date of his arrest until March 1999, when he was arrested on an unrelated federal warrant. From March 1999 through his trial date, he was incarcerated based on those federal charges. Therefore, his pretrial incarceration could not have been avoided.

30. Perez certainly has not adduced clear and convincing evidence that contradicts the State court's findings. In fact, Perez's assertion that had his mother still been living, she would have provided "absolute alibi" testimony is unconvincing. *See* Wilson, 250 F.3d at 396 (unavailable testimony of defendant's father did not suggest that if father's testimony had been presented the outcome of the trial would have been different.)

31. The federal court must give deference to the factual determinations made by a state trial court. Boyd v. Ward, 179 F.3d 904, 912 (10th Cir. 1999), *cert. denied*, 528 U.S. 1167, 120 S.Ct. 1188 (2000). The findings of the New Mexico Court of Appeals on this identical claim are neither contrary to established federal law nor do they represent unreasonable determinations of the facts in light of the evidence presented and the pertinent proceedings.

### Denial of Access to Court Transcripts and Interlocutory Appeal

32. Perez claims that the trial court erred by not allowing him access to transcripts and not authorizing an interlocutory appeal from the court's denial of Perez's motion to dismiss based on speedy trial grounds. [Doc. 1.] On June 22, 1999, Perez filed an "Order/Motion for Appeal" [Doc. 10, Ex. G] apparently requesting court transcripts and authorization to appeal the Order denying his Motion to Dismiss. On July 1, 1999, Perez filed "Defendant's Filing of Motion for Preparation of Transcripts." After his trial, Perez filed his "Notice of Appeal" [Doc. 10, Ex. P] of the trial court's Judgment and Commitment Order and proceeded to appeal this issue, along with others.

33. The New Mexico Court of Appeals considered Perez's same argument and affirmed the trial court's decision. [Doc. 10, Ex. FF.] The Court of Appeals reasoned that a defendant generally may not appeal from non-final orders and furthermore, that Perez's speedy trial claim was without merit.

34. The findings of the New Mexico Court of Appeals on this identical claim are neither contrary to established federal law nor do they represent unreasonable determinations of the facts in light of the evidence presented and the pertinent proceedings.

### Denial of Request for New Counsel

35. In his habeas petition, Perez contends that he was denied a fair trial both because the trial court appointed counsel who did not adequately represent him. [Doc. 1.] In his Writ for Cert, Perez also alleges that he was denied effective assistance of counsel. [Doc. 10, Ex. GG.]

36. On May 6, 1999, Perez filed a Motion to Substitute Court Appointed Attorney. (Record Proper - no pp nos.) In that Motion, Perez argued that Mr. Dawdy had failed to do his job to the best of his ability as a professional. Perez cited a telephone conversation with Mr. Dawdy,

11

during which Mr. Dawdy said simply that he would only do what Perez said to do. On June 2, 1999, Perez wrote a letter complaining both of his prior attorney's conduct (Kieran Ryan) and of Mr. Dawdy's conduct. [Doc. 10, Ex. C.] Specifically, Perez claimed that Mr. Dawdy's prior representation of him with respect to a conviction in late 1998 was improper. Perez also complained that Mr. Dawdy failed to move for his transfer to a half-way house, failed to see that he got the proper medical attention (a repair to his glasses), and failed to protest Perez's inadequate law library access. Perez's letter also set forth conclusory allegations that Mr. Dawdy violated Perez's constitutional and due process rights.

37.     At a hearing on May 25, 1999, Perez's claims complaints about Mr. Dawdy were discussed at length. [May 25, 1999 Tape.] Perez stated that Mr. Dawdy repeatedly had violated his constitutional rights, but did not provide specific supporting allegations. Mr. Dawdy responded by informing the Court that Perez had objected to the work Mr. Dawdy was attempting to do on the case and that he had prepared a number of pre-trial motions that he was unable to file since Perez had indicated he wanted to discuss all matters with Mr. Dawdy before any actions were taken. Because Perez had not been in custody and out of contact with Mr. Dawdy, there was no communication between counsel and his client. At the May 25 hearing, Perez also argued that he had had to file his own motion to dismiss based on speedy trial grounds because Mr. Dawdy had refused to do so. Mr. Dawdy explained that he had done the research on the issue but he refused to advance the argument because he did not believe the motion was meritorious.

38.     After hearing argument from all parties involved, including Perez, the Court denied Perez's motion for new counsel. [May 25, 1999 Tape; Doc. 10, Ex. E.] The court informed Perez that while he may not like his attorney or he may feel "uncomfortable" with him, a defendant is not

12

entitled to pick an attorney he likes or with whom he feels comfortable. Moreover, Perez already had had one attorney with whom he had similar communication problems and that attorney was replaced by Mr. Dawdy. The court also advised Perez that his attorney had been working on this case, that Perez needed to treat Mr. Dawdy with some respect, and that Perez and Mr. Dawdy were "together until this was done."

39. On June 3, 1999, Mr. Dawdy filed a "Notice of Defendant's Filing of Complaint Against Counsel with Disciplinary Board of the Supreme Court." [State R.P.[2]] The Notice stated that Perez had asked the Disciplinary Board to revoke Mr. Dawdy's bar membership. On June 3, 1999, Mr. Dawdy also filed a "Notice of Defendant's Refusal to Discuss Case with Counsel," informing the Court that he had attempted to meet with Perez on May 31, 1999 to discuss the case but that Perez terminated the session shortly after it started. [Doc. 10, Ex. C.] Also on June 3, Mr. Dawdy filed a "Notice of Defendant's Refusal to Allow Counsel to File Pre-Trial Motions." [State R.P.] Perez apparently did not allow Mr. Dawdy to file certain pre-trial motions even though Mr. Dawdy informed Perez of the need to do so. On June 16, 1999, Mr. Dawdy filed "Notice of Defendant's Filing of Second Complaint Against Counsel with Disciplinary Board of the Supreme Court." [State R.P.]

40. At another hearing on June 7, 1999, the trial court heard argument from all parties, including Perez. [Tape of June 7, 1999 hearing.] Perez requested new counsel again, and the trial court indicated that Mr. Dawdy was still going to represent Perez. Both the State and the trial court noted the disciplinary pleading that Perez had file against Mr. Dawdy. Perez argued that Mr. Dawdy was retaliating against him for filing the disciplinary complaint. Mr. Dawdy again advised the court

---

[2]This pleading is a part of the State Record Proper, but no pagination was provided in that Record.

that he was unable to file any pre-trial motions because Perez would not cooperate with him in discussing trial preparation. The trial court told Perez that he did not get to choose an attorney of his liking and that Mr. Dawdy was a qualified attorney. The court finally admonished Perez by stating that it was not going to appoint yet another attorney and then hear Perez argue that he had speedy trial problems when he was the party delaying the process. The trial judge also informed the parties that he saw no substantive claim in the disciplinary complaint, although he stated he could be wrong.

41. On June 16, 1999, Mr. Dawdy filed a number of pre-trial motions, including a "Request for Additional Disclosure," "Request for Preparation of Preliminary Hearing Audiotapes," and "Notice of Alibi Defense." He also filed other pre-trial pleadings as required by the court.

42. To establish ineffective assistance of counsel, Perez must make a two-prong showing: (1) that counsel's performance was constitutionally defective, and (2) that the deficient performance prejudiced the defense in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).

43. To prove deficient performance, Perez must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Hickman v. Spears, 160 F.3d 1269, 1273 (10th Cir. 1998). Thus, scrutiny of counsel's performance must be "highly deferential" and avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062, 116 S.Ct. 743 (1996). To be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 126 (1997).

44. The trial court considered Perez's complaints about his counsel and concluded that some of the allegations were merely conclusory while others were unfounded. The same arguments were raised on direct appeal and rejected by the New Mexico courts. [Doc. 10, Ex. FF.] Based on the record before this Court, it appears that Mr. Dawdy made every effort to cooperate with Perez and present his defense but that Perez failed to cooperate with his attorney. The Court cannot say that Mr. Dawdy's performance was "completely unreasonable" or unreasonable at all.

45. Moreover, The findings of the New Mexico Court of Appeals on this identical claim are neither contrary to established federal law nor do they represent unreasonable determinations of the facts in light of the evidence presented and the pertinent proceedings.

### Denial of Change of Venue

46. Perez also claims in his habeas petition that the court erroneously denied a change of venue, thereby preventing him from receiving a fair trial. In "Defendant's Filing of Motion for Change of Venue"[3] [State R.P., filed July 1, 1999], Perez claimed that due to pretrial publicity and because he is known to "almost everyone in Luna County" it was impossible for him to receive a fair trial in that county.

47. In considering this same issue, the New Mexico Court of Appeals explained that the record of jury proceedings reflected that few potential jurors knew Perez personally or by reputation and that no challenged potential jurors were selected to hear the case. [Doc. 10, Ex. FF.] Furthermore, any comments by prospective jurors who knew Perez were restrained to avoid prejudicing him in the eyes of other prospective jurors.

---

[3]Although Mr. Dawdy prepared this motion on behalf of Perez, he notes in the Motion that due to ethical constraints he could not file the motion but did agree to prepare it so that Perez could file it should he elect to do so.

48.     Perez has not brought forth any specific evidence to show that pretrial publicity somehow affected the fairness of his trial or that "almost everyone in Luna County" knew him.

49.     The findings of the New Mexico Court of Appeals on this identical claim are neither contrary to established federal law nor do they represent unreasonable determinations of the facts in light of the evidence presented and the pertinent proceedings.

### Failure of Trial Judge to Recuse

50.     Perez' Petition for Writ argued that the district court judge exhibited bias against Perez and that such bias resulted in numerous adverse rulings for Perez that contributed to an unjust conviction. Specifically, Perez complained that the judge was "sour" towards his request for a repair to Perez's glasses and that the "judge's unpleasantness about such a simple matter" suggested that his bias infected other decisions. [Doc. 10, Ex. GG.] On July 1, 1999, Perez filed "Defendant's Filing of Motion for Change of Judge[4]" [State R.P.], that was denied.

51.     After listening to the tape-recorded transcripts of the May 25, 1999 and June 7, 1999, this Court cannot find that the trial court judge exhibited any bias toward Perez with respect to Perez's requests about his glasses. In fact, at one point, the trial judge personally examined the glasses but simply did not observe the scratches on the lenses of which Perez complained. Nonetheless, the Court issued an Order on June 7, 1999, ordering that Perez be transported to and from an eye doctor as soon as possible for the repair of his glasses.

52.     Furthermore, even if Perez could show bias on the part of the trial judge, which he has not demonstrated, there is no basis to conclude that any adverse rulings were the result of bias.

---

[4]Although Mr. Dawdy prepared this motion on behalf of Perez, he notes in the Motion that due to ethical constraints he could not file the motion but did agree to prepare it so that Perez could file it should he elect to do so.

53. The findings of the New Mexico Court of Appeals on this identical claim are neither contrary to established federal law nor do they represent unreasonable determinations of the facts in light of the evidence presented and the pertinent proceedings.

### Refusal to Release Perez to Interview Witnesses

54. Perez claims in his Petition for Writ that he was unable to put on a defense without the opportunity to be released from confinement to personally interview witnesses. He sought to interview witnesses personally because he had no confidence in his attorney. On July 1, 1999, he filed "Defendant's Filing of Motion for Release to Attend Witness Interviews,[5]" and the motion was denied.

55. The New Mexico Court of Appeals considered this same claim and denied Perez's request, first because Perez cited no legal authority to justify such release and second because the court has the discretion to establish conditions of release. Finally, the court reasoned that it had rejected Perez's claim that his attorney was incompetent or could not be trusted.

56. The findings of the New Mexico Court of Appeals on this identical claim are neither contrary to established federal law nor do they represent unreasonable determinations of the facts in light of the evidence presented and the pertinent proceedings.

### Amended Supplemental Criminal Information at Sentencing

57. Perez argued in his Petition for Writ that he should be re-sentenced in accord with the original supplemental criminal information (charging him with a single prior felony conviction) and

---

[5]Although Mr. Dawdy prepared this motion on behalf of Perez, he notes in the Motion that due to ethical constraints he could not file the motion but did agree to prepare it so that Perez could file it should he elect to do so.

that it was fundamentally unfair to allow the State to "redraft and refile" the charging documents "simply because it suits it to do so."

58. The Court of Appeals considered Perez's argument and rejected it. [Doc. 10, Ex. J.] The amended supplemental criminal information simply provided the proper criminal background information. Thus, Perez was not prejudiced by the amendment since the same information would have been used even if Perez were re-sentenced.

59. The findings of the New Mexico Court of Appeals on this identical claim are neither contrary to established federal law nor do they represent unreasonable determinations of the facts in light of the evidence presented and the pertinent proceedings.

## Recommended Disposition

That the petition be denied and that the case be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge